UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KMG INTERNATIONAL, BV,
a foreign corporation,

Plaintiff,

vs.

LUNA-PARK,
a foreign corporation,

Defendant.

## PLAINTIFF'S COMPLAINT

Plaintiff, KMG INTERNATIONAL, BV ("KMG" or "Plaintiff"), hereby file this Complaint, and sue Defendant, LUNA-PARK ("Luna-Park" or "Defendant"), and further state as follows:

### INTRODUCTION

1.     This is an action for claims of federal unfair competition under the Lanham Act, common law unfair competition, violation of Florida's Deceptive and Unfair Trade Practices Act, and patent infringement.

### PARTIES

2.     Plaintiff, KMG, is a foreign corporation organized under the laws of the Netherlands with its principal place of business in the Netherlands.

3.     Since 1991, KMG has been active in the development, design, and production of various fairground attractions and amusement rides, which are sold by KMG throughout the United States and Europe.

4.      The amusement rides that KMG has developed, manufactured and sold each involve innovative and unique design concepts and are inherently distinctive. KMG's strict adherence to high safety standards in the design and manufacturing of its products, including its compliance with international quality standards in industrial production, has been internationally recognized among manufacturers in the amusement ride industry.

5.      Defendant, Luna-Park is a foreign corporation organized under the laws of Poland with its principal place of business in Poland. Luna-Park is a manufacturer and distributor of amusement rides throughout the United States and Europe.

## JURISDICTION AND VENUE

6.      Defendant was conducting business throughout the United States and, specifically, within the State of Florida by making, importing, distributing, advertising, promoting, marketing, reproducing, offering for sale and/or selling unauthorized and knock off amusement rides, designs, and/or component parts which appear virtually identical to the amusement rides designed, manufactured, distributed and/or sold by the Plaintiff.

7.      This Court has jurisdiction in this matter pursuant to 15 U.S.C. § 1121, as well as 28 U.S.C. §§ 1331, 1332 and 1338(a) and the doctrines of pendent and ancillary jurisdiction.

8.      Venue in this matter is proper pursuant to 28 U.S.C. § 1391(b) and (c), and 1400(b).  Specifically, the causes of action sued upon accrued in the District and Defendant was present in this jurisdiction either personally or through their agents and committed tortious acts and affirmative acts of infringement and has sold, offered for sale, and/or marketed tangible products while present in the State of Florida and the Middle District of Florida, Tampa Division, and is conclusively presumed to be both engaged in substantial activities in this state and conducting business in this state based upon said sales and/or offers to sell.

2

## KMG'S INVENTIONS AND PATENT

9.     Since 2002, KMG has designed the "Freak Out" amusement ride, which is a swing attraction with a height of 20 meters which swings backwards and forward (over the spectators) and which can be stored on one trailer.

10.     United States Patent 6,872,144 ("the '144 Patent"), entitled "Amusement Device" was duly and lawfully issued on March 29, 2005. KMG is the sole owner of all rights, title and interest in the '144 Patent. The Freak Out utilizes this invention. A true copy of the '144 Patent is attached hereto as **Exhibit "1"**.

## BACKGROUND FACTS

11.     On February 3-7, 2015, the International Independent Showmen's Association ("IISF") held a trade show at 6915 Riverview Drive, Gibsonton, Hillsborough County, Florida.

12.     IISF is one of the largest trade shows within the amusement ride industry. The trade show provides the opportunity for the sellers of amusement rides to market, promote, advertise and sell their products, and provides more ample buying opportunities.

13.     On or about February 3, 2015, Defendant Luna-Park displayed a large banner and distributed sales brochures which included a confusingly similar knockoff version of KMG's "Freak Out" ride, which Luna-Park called the "Extreme" ride. Specifically, the promotional materials distributed at this trade show showed that Luna-Park marketed, promoted, and attempted to sell KMG's "Freak Out" ride as the "Extreme" ride. A side-by-side comparison of the drawings is attached hereto as **Exhibit "2"**. A side-by-side comparison of the rides is attached hereto as **Exhibit "3"**. A side-by-side comparison of the trailers is attached hereto as **Exhibit "4"**. A true copy of a photograph depicting the large banner of the Extreme ride used by

3

Luna-Park is attached hereto as **Exhibit "5"**. A true copy of the KMG brochure is attached hereto as **Exhibit "6"**. A true copy of the Luna-Park brochure is attached hereto as **Exhibit "7"**.

14. Defendant Luna-Park's so called "Extreme" ride utilized mechanical systems which infringed upon the '144 Patent. A comparison of the schematics and drawings reflects the clear intent by Luna-Park to infringe upon KMG's U.S. patent rights. (*See* Exhibits 2, 6, 7, and Figure 2 in Exhibit 1).

15. Tellingly, Luna-Park's brochure of the Extreme ride, distributed at the IISF 2015 trade show, further reflects its intent to sell to U.S. customers by advising customers that the Extreme ride would not be available in selected European countries covered by the European Patent EP1407804. Luna-Park purposefully omitted any reference to the U.S. '144 Patent, or any limitation about making the Extreme ride available in the United States. (*See* Exhibit "7").

16. Defendant Luna-Park, through its employers and agents in attendance at the IISF trade show in Gibsonton, Florida, was specifically and actively marketing, promoting, advertising, offering for sale, and attempting to sell the Extreme ride to U.S. customers.

17. In advance of the trade show, Luna-Park publicly announced that it will be selling the Extreme ride during the IISF 2015 trade show. Specifically, on January 25, 2015, Luna-Park placed an advertisement for the Extreme ride on usedrides.com and specifically requested that potential buyers "Come and visit us at Gibtown show" February 3-February 7, 2015 for a "Special Offer" on the Extreme ride which they were specifically advertising for the price of $465,000. A screenshot of the advertisement on usedrides.com is attached hereto as **Exhibit "8"**.

18. Luna-Park has admitted that they have signed contracts while in Orlando at the November 2014 IAAPA trade show for the sale of their rides and, as a result, have now reached the U.S. market. Specifically, a press release found on Luna-Park's website dated January 29,

2015 is attached hereto as **Exhibit "9"**, and specifically states: *"We had a very successful show at IAAPA EXPO 2014 in Orlando. We signed contracts and as a result we reached US and Australian market."* To the right of this quote, Luna-Park displays a photograph of the Extreme ride. (On previous occasions, Luna-Park has promoted this ride under the name Star Wars).

19.     Defendant Luna-Park is in no way associated with, sponsored by, or affiliated with KMG, and Defendant's unauthorized use of Plaintiff's designs, patents, trademarks, logos, trade dress, and/or other intellectual property is without the authorization or authority of the Plaintiff.

20.     Plaintiff has retained the undersigned law firm of Hill, Rugh, Keller & Main, P.L. and The Sheehan Firm, P.C., to pursue this matter on its behalf, and it is obligated to pay them reasonable attorneys' fee and costs and litigation expenses associated with the prosecution of this matter.

## COUNT I

### Unfair Competition under the Lanham Act against Luna-Park

21.     Plaintiff realleges and incorporates by reference paragraphs 1 through 20 above as if set forth fully in this count.

22.     This is a count for unfair competition pursuant to 15 U.S.C. § 1125(a) against Luna-Park.

23.     Through Luna-Park's continued and elicit use of the Plaintiff's proprietary and protected ornamental features, designs, design features, advertising and promotion material, photographs and other actions at issue, Luna-Park has engaged in unfair competition and has continued to falsely designate the origin of Defendant's amusement rides.

24.     Through the use and incorporation of Plaintiff's trade dress, trademarks, advertising and marketing material, photographs and materials or colorable imitations thereof, Luna-Park has further created a false description or representation of the products and services provided by the Defendant, thereby affecting interstate commerce.

25.     The total image and trade dress of KMG's amusement rides is inherently distinctive, primarily non-functional and the Defendant's trade dress is confusingly similar as demonstrated by the exhibits attached hereto.

26.     A comparison of the total impression of the rides shows that the placement, design, and colorization of the masts, the masts' supports, the support arm, and other elements have been adopted in the Extreme ride to imitate the Freak Out ride.

27.     Specifically, Luna-Park made choices in the size, finish, design, and placement such that the Extreme is confusingly similar to the total impression of the Freak Out. For example, a few of the areas where the Freak Out and Extreme match are as follows:

   a.  The masts are constructed as an a-frame and made of a square tubular construction, which on one side has been provided with turbo lighting and similar decoration;
   b.  The gondola arms are made out of square long-shaped tubes, pointing downwards at an angle and are surrounded by turbo lighting and have been provided with similar decoration;
   c.  The gondola arms are interconnected by round shaped tubing;
   d.  The manner of building-up and storage is identical;
   e.  The pendulum/swing arm has a round shape, is adorned with turbo lighting and is provided with similar decoration;
   f.  The lower mast supports are built with an identical box profile constructed in an egg shape;
   g.  The diagonal strut/support between the mast supports and the trailer are identical and painted in the same color as the egg shaped mast supports;
   h.  The placement of the logo sides on either side of the attraction;
   i.  The use of the primary colors red, blue, and yellow on the attraction;
   j.  The attraction swings forward and backwards;
   k.  The logos on top of the ride;
   l.  The stairs to the left and right of the platform; and
   m.  The folded decorative panel under the platform.

6

28.     The Plaintiff has expended substantial money and time advertising and marketing its amusement rides, and the products have acquired secondary meaning due to consumers associating these amusement rides with KMG.

29.     Through their marketing, advertising and representations, the Defendant has continued to misrepresent to prospective purchasers that the Defendant's imitation products are designed or created by Defendant, rather than Plaintiff.

30.     Defendant is seeking to trade off the goodwill and reputation of Plaintiff and its products, and gain a competitive advantage for their imitation and/or knockoff products by associating their inferior products with Plaintiff's products, marks and materials and passing their products off as those of the Plaintiff.  In the alternative, Defendant has actually copied Plaintiff's goods, materials and products and are passing those off as Defendant's own products.

31.     There is a public benefit in ensuring that the public is not deceived into thinking that Defendant's products are associated with KMG's products when that is not the case.

32.     The foregoing actions and unfair competition by the Defendant has been deliberate, willful, and wanton.

33.     There is a strong likelihood of consumer confusion which has and/or will continue to result from Defendant's illicit use of Plaintiff's trade dress, marks, materials and confusingly similar product image which, when combined with the inferior quality of Defendant's products, will damage, dilute and tarnish Plaintiff's name, reputation, goodwill and identity.

34.     As a proximate result of Defendant's conduct, the Plaintiff has been damaged. Such damages include damage to Plaintiff's goodwill and reputation, and other damages, including lost sales due to the deceptive practices engaged in by the Defendant, and Plaintiff is entitled to injunctive relief and to recover its costs and reasonable attorneys' fees.

## COUNT II

### Common Law Unfair Competition against Luna-Park

35.    Plaintiff realleges and incorporates by reference paragraphs 1 through 20 above as if set forth fully in this count.

36.    This is a count for unfair competition pursuant to Florida common law against Luna-Park.

37.    KMG spent considerable time and money to design, create, develop, manufacture, distribute and sell the amusement rides described in the preceding paragraphs, as well as the marketing and promotional material related thereto.

38.    KMG has also spent considerable time and money developing a successful market for its rides, and has developed a reputation for high quality, standards, performance and service both internationally and throughout the United States, including the State of Florida.

39.    Plaintiff has expended substantial money and time marketing and advertising its amusement rides, such that the amusement ride industry has come to associate intellectual property of KMG with their respective companies, and its valuable reputation and goodwill. Plaintiff's reputation and the success of its products, as well as the successes associated with Plaintiff's related materials and intellectual property, are well known in the marketplace and well known to Defendant.

40.    Through the Defendant's continued and elicit use of the Plaintiff's proprietary and protected ornamental features, designs, design features, advertising and promotion material, photographs and other actions at issue, the Defendant has continued to falsely designate the origin of Defendant's amusement rides.

41.    Through the use and incorporation of Plaintiff's trade dress, marks, trademarks, advertising and marketing material, photographs and materials or colorable imitations thereof,

8

the Defendant has further created a false description or representation of the products provided by the Defendant.

42.      Through the Defendant's continued the illicit use of Plaintiff's intellectual property, confusingly similar product and design, and their overall marketing and promotional strategy, Defendant has continued to falsely designate the origin of Defendant's amusement rides, seeking to pass off its inferior imitation products as that of Plaintiff.

43.      Through their advertising and representations, the Defendant has continued to misrepresent to prospective purchasers that the Defendant's products are produced, sponsored, authorized, affiliated, or somehow endorsed by the Plaintiff. In the alternative, Defendant has actually copied Plaintiff's goods, materials and products and is passing those off as Defendant's own products.

44.      As a proximate result of Defendant's conduct, Plaintiff has been damaged.  Such damages include damage to Plaintiff's goodwill and reputation, and other damages, including lost sales due to the deceptive practices engaged in by the Defendant, the dilution of Plaintiff's marks, and the dilution of the market for the Plaintiff's products.

45.      Defendant's acts of unfair competition have caused and are likely to cause substantial injury to the public and to Plaintiff for which there is no adequate remedy at law. Plaintiff is entitled to injunctive relief and to recover its costs and reasonable attorneys' fees.

## COUNT III

### Violation of Florida's Deceptive and Unfair Trade Practices Act against Luna-Park

46.      Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 20 stated previously.

47.     This is an action against Defendant for damages, and declaratory and injunctive relief, pursuant to Florida Statutes §§ 501.201 *et seq.,* commonly referred to as Florida's Deceptive and Unfair Trade Practices Act.

48.     The foregoing acts of Defendant constitute unfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts and practices in the conduct of trade and commerce, in violation of Florida Statutes §§ 501.201 *et seq.*

49.     At all times material to Plaintiff's Complaint, Defendant acted willfully, intentionally and maliciously, and with total disregard for Plaintiff's rights and property interests.

50.     Defendant's conduct offends established public policy, and their practices with regard to their making, importing, distributing, promoting, marketing, reproducing, offering for sale and/or selling unauthorized and imitation amusement rides was immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiff.

51.     As a direct and proximate result of all of Defendant's actions described above, Plaintiff has sustained substantial damages to its legitimate business interests.

52.     Moreover, Plaintiff and other companies similarly situated as Plaintiff risk suffering irreparable harm if Defendant is not enjoined from continuing to engage in such unlawful conduct.  Plaintiff is without an adequate remedy at law, and the issuance of an injunction will not threaten the public health, safety or welfare.  Also, the equities of this action strongly favor the Plaintiff.

53.     Under Florida Statutes §§ 501.201 *et seq.*, therefore, Plaintiff is entitled to declaratory and injunctive relief against Defendant which declares Defendant's trade practices as unfair, deceptive and unconscionable, and which enjoins Defendant and all those in active

concert or participation with Defendant from continuing to engage and profit from such unfair, deceptive and unconscionable acts and practices.

## COUNT IV

### Infringement of the '144 Patent by Luna-Park

54.     Plaintiff realleges and incorporates by reference paragraphs 1 through 20 above as if set forth fully herein.

55.     Luna-Park, in violation of 35 U.S.C. § 271, is and has been directly infringing, contributing to the infringement of, and/or inducing others to infringe the '144 Patent by making, using, selling, and/or offering to sell in the United States, or importing into the United States, without authority, amusement rides utilizing the inventions and designs claimed in the '144 Patent.

56.     At minimum, '144 Patent is being infringed upon by Luna-Park in connection with its Extreme ride.

57.     Luna-Park had prior notice and knowledge of the '144 Patent. Luna-Park has acknowledged, and admitted, that their Extreme ride infringes on the U.S. patent rights and European patent rights of KMG. Specifically, among other things, Luna-Park admitted that "we discovered that the arm-swing structure is in conflict with your patent."

58.     After admitting the patent violation, Luna-Park requested a license for using the patented structure, and was specifically advised by KMG that a patent license option is not available or negotiable for customers who are based in the United States.

59.     Notwithstanding their lack of a license or authorization from KMG, at the IISF trade show, Luna-Park attempted and offered to sell the Extreme ride to potential U.S. and foreign customers.

11

60.     Luna-Park lacks any justifiable belief that there is no infringement or that the infringed claims are invalid. Luna-Park has therefore acted with recklessness in its infringing activity, making Luna-Park's infringement of the '144 Patent willful. As a result, KMG is entitled to an award of exemplary damages, attorney's fees, and costs in bringing this action.

61.     Luna-Park intends to continue its unlawful infringing activity related to the '144 Patent.

62.     Luna-Park's acts of infringement have caused damage to KMG, and KMG is entitled to recover from Luna-Park the damages sustained by KMG as a result of Luna-Park's wrongful acts, and injunctive relief and to recover its costs and reasonable attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant Luna-Park as follows:

1.     That Defendant, its officers, directors, agents, servants, employees, and all other persons or entities in active concert or participation with it, or any of them, be preliminarily and permanently enjoined and restrained from the presentation, display, marketing, promotion, advertising, importing, selling, and/or offering to sell in the United States of confusingly similar rides and rides which infringe upon the '144 Patent;

2.     For judicial declaration that Defendant has engaged in unfair competition pursuant to the Lanham Act, 15 U.S.C. § 1125(a) and/or common law;

3.     Enter judgment that Defendant has violated Florida's Deceptive and Unfair Trade Practices Act, including injunctive relief;

4.     Enter a judgment that Defendant has infringed, directly and/or indirectly, and by way of inducing and/or contributing to the infringements of the '144 Patent;

5.     That Defendant accounts to Plaintiff for all profits realized as a consequence of Defendant's unlawful acts, and that such profits be trebled, as provided by law pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117 or otherwise;

6.     That Plaintiff be awarded damages in the full amount it has sustained as a consequence of Defendant's acts, trebled were provided by law, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117 or otherwise;

7.     That Plaintiff has and recovers from Defendant reasonable attorney's fees, costs and disbursements in this action pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117 and as otherwise authorized by law;

8.     That Defendant pays compensatory and punitive damages to Plaintiff;

9.     That any monetary award include pre and post judgment interest at the highest rate by law;

10.     That Plaintiff be awarded damages adequate to compensate Plaintiff for the patent infringement, inducement of infringement, and contributory infringement, together with pre and post judgment interest and accounting;

11.     Increased damages pursuant to 35 U.S.C. § 284;

12.     A finding that this case is exceptional and award to Plaintiff of its attorney's fees, expenses and costs pursuant to 35 U.S.C. § 285;

13.     That Defendant pays Plaintiff costs of suit herein, and

14.     Such other and further relief as this Court may deem just and proper.

## Demand for Jury Trial

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 5, 2015.

Respectfully submitted,

HILL, RUGH, KELLER & MAIN, P.L.

Richard A. Keller, Esquire
Florida Bar No. 0946893
Christopher T. Hill, Esquire
Florida Bar No. 0868371
HILL, RUGH, KELLER & MAIN, P.L.
390 N. Orange Avenue, Suite 1610
Orlando, Florida 32801-2311
Telephone: (407) 926-7460
Fax: (407) 926-7461
E-mail: filings@hrkmlaw.com
*Attorneys for Plaintiff*

14